IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 3:15-CR-191 |
| | ) | |
| ROBERT C. DOYLE, | ) | |
| | ) | |
| *Defendant*. | ) | |

**UNITED STATES' POSITION ON SENTENCING and
MOTION FOR UPWARD VARIANCE**

The United States of America, through its attorneys, Dana J. Boente, United States Attorney, and Peter S. Duffey, Assistant United States Attorney, hereby submits its position with respect to sentencing.   The United States concurs with the guidelines calculation of the U.S. probation officer.   Accordingly, the United States agrees that the appropriate total offense level for this defendant is 27, with a criminal history category of VI, yielding a guidelines range of 130-162 months on Count One, and a restricted guidelines range of 120 months on Count Two.

Moreover, the United States argues that facts exist which warrant an upward variance in this case in light of the underrepresentation of Doyle's criminal history, his threats of violence to the intended victim in this case, to promote respect for the law, and to provide adequate deterrence.   In addition to relying on Defendant's criminal history to support this variance, the United States relies upon the Defendant's conduct during the conspiracy period of the indictment.

Therefore, it is the Government's position that pursuant to the factors contained in 18 U.S.C. § 3553(a) and for the reasons set forth below, including but not limited to Defendant's criminal history, the nature and circumstances of the instant convictions and relevant conduct, the need to promote respect for the law, and to provide adequate deterrence to Defendant, the Court should vary upward from the applicable guideline range and impose a sentence of 210 months on Count One, and a sentence of 120 months on Count Two, to be served concurrently. Through conversations with counsel for the defendant, it is the Government's understanding that the defendant does not object to the Government's recommendation and agrees that there is no need for a contested sentencing.

## I.      BACKGROUND

Sometime in October 2015, DOYLE knowingly became part of a plan with others to take jewelry, precious metals, and U.S. currency from a local jewelry distributor by force and threats of violence.   The jewelry distributor engaged in interstate commerce.   In accordance with this plan, DOYLE enlisted the support of at least two co-conspirators to assist in the robbery to take place sometime in November 2015.

As part of the plan, on October 25, 2015, DOYLE met with someone who he believed was the intended victim and placed an order to purchase approximately $100,000 worth of jewelry and precious metals.   Another meeting was planned to take place where instead of purchasing this property the conspirators would rob the individual of the ordered items, as well as any other valuable property or currency that the jeweler had in his possession at the time.   Prior to the actual robbery taking place, the FBI inserted an undercover agent to pose as the jewelry distributor. During this time period, Doyle made specific, detailed threats to kill the jeweler as part of the robbery scheme to a confidential informant, explaining to that confidential informant exactly how

2

Doyle would kill the jeweler and subsequently dispose of the jeweler's corpse.   On November 8, 2015, the FBI arrested the defendant and his co-conspirators before they could commit the robbery.

Prior to his arrest DOYLE also set up the purchase of several firearms and explosives for himself and a co-conspirator to purchase.   Both DOYLE and the co-conspirator had each previously been convicted of a crime punishable by imprisonment for a term exceeding one year. DOYLE made arrangements for the purchase of these firearms with an individual who, unbeknownst to DOYLE, was working for the FBI.   After meeting with this person, DOYLE picked the specific firearms and explosive he wished to purchase, and set a proposed meeting to purchase these weapons to take place sometime in early November.   On November 8, 2015, DOYLE called the undercover FBI contact and agreed to meet and purchase these weapons; however, later that morning it was the co-conspirator who arrived at the meeting to conduct the transaction.   After paying for the firearms and an explosive device, FBI agents immediately arrested the co-conspirator, and arrested DOYLE a short time later

## II.    <u>UNOPPOSED MOTION FOR VARIANCE AND POSITION ON SENTENCING</u>

The parties have reached an agreement to a recommended sentence of 210 months on Count One, and a concurrent sentence of 120 months on Count Two, which is the result of a three-level upward variance in DOYLE's base offense level total, yielding a new guidelines range of 168-210.

"[I]n imposing a sentence after *Booker*, the district court must engage in a multi-step process.   First, the court must correctly determine, after making appropriate findings of fact, the applicable guideline range."   *United States v. Moreland*, 437 F.3d 424, 432 (4th Cir. 2006). "Next, the court must 'determine whether a sentence within that range serves the factors set forth in § 3553(a) and, if not, select a sentence [within statutory limits] that does serve those factors.'" *Id.* (*quoting United States v. Green*, 436 F.3d 449, 455 (4th Cir. 2006)).   In making this determination:

> a sentencing court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant" and the need "to reflect the seriousness of the offense," provide "just punishment," "afford adequate deterrence," "protect the public," and "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

*United States v. Hampton*, 441 F.3d 284, 287 (4th Cir. 2006) (*quoting* 18 U.S.C. § 3553(a)).

Moreover, in selecting a sentence that serves the factors set forth in § 3553(a), "no limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."   18 U.S.C. § 3661.   Similarly, though cast in the language of departures, various guidelines provisions and case law support courts' taking into account of all relevant information in fashioning an appropriate sentence for a particular defendant.   "In determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law."   U.S.S.G. § 1B1.4.   Moreover, a "sentencing court may consider conduct of

which a defendant has been acquitted," *United States v. Watts*, 519 U.S. 148 (1997), or for which

he was never charged.  *See generally United States v. Fokkoun-Ngassa*, 253 Fed. Appx. 269, 270

(4th Cir. Va. 2007)(collecting cases); *see also* U.S.S.G. § 5K2.21 (justifying upward departures for

conduct "underlying a potential charge not pursued in the case . . . for any other reason; and . . . that

did not enter into the determination of the applicable guideline range.").

### A.      Nature and Circumstances of the Offense; Provide Adequate Punishment

Here, DOYLE concocted a scheme to commit armed robbery of a local businessman, and

made credible threats to kill the intended victim as an integral part of the robbery scheme.

Moreover, DOYLE enlisted the support of at least two other individuals and brought them into the

conspiracy to commit the robbery.  DOYLE also initiated an arms deal where several illegal

firearms, two with silencers attached, and one explosive device were to be purchased.

Additionally, on at least two occasions, DOYLE was recorded in conversations about matters

unrelated to the charged conspiracy in which he stated his willingness to harm or kill other

individuals if they were to act in a way contrary to his interests in those other matters.  DOYLE's

blatant disregard for the law, as well as the safety of individuals in the community at large,

provides ample reason for the Court to grant an upward variance.

### B.      History and Characteristics of the Defendant

In addition to the information stated above regarding the circumstances of DOYLE's

offense, his criminal history reveals someone who has a propensity for criminal behavior.  As

early as age 17, DOYLE began his long history of committing crimes in Virginia.  Moreover,

when given the opportunity to return to the community, DOYLE violated repeatedly violated his

probation.  DOYLE's offense conduct in this case demonstrates DOYLE's disinterest in

resuming a law-abiding existence upon release from prison or court supervision: DOYLE began

conspiring to rob and kill a local jewelry dealer only months after being released from his most recent stint on probation.

### C.      A Variant Sentence Serves the Factors of § 3553

1.      <u>Need to Deter Future Criminal Conduct and Protect the Public from Defendant's Future Criminal Conduct</u>

As indicated above, DOYLE's criminal behavior is of the sort that has broad, sweeping effects on the public, and but for the efforts of the F.B.I., could have led to a catastrophic result. DOYLE was given lenient sentences in the past, however, despite having been on a long period of probation, Defendant resorted back to criminal behavior.   Indeed, he enhanced his criminal behavior by graduating from mostly non-violent larceny and drug offenses to the serious, violent charges described here.   Such a graduation is, in fact, a regression in that it shows someone who has not learned from his mistakes and has little to no concern for the well-being of others.   One willing to commit armed robbery poses significant enough risks; but when one goes from that disposition to being one threatening to take another's life, protection of the public is paramount.

2.      <u>Need to Provide Needed Treatment to Defendant</u>

Defendant has indicated frequent past use of marijuana and numerous other drugs and has never participated in substance abuse treatment.   *See* PSR ¶ 87.

3.      <u>Need to Avoid Unwarranted Disparities</u>

DOYLE was deemed an organizer and manager in this case and received a two-level enhancement, thus his role was more significant than the other codefendants in this case.

### CONCLUSION

For the reasons stated above, the United States submits that a three-level increase in DOYLE's base offense level total is appropriate (and increase from level 27 to 30), which results

6

in a guidelines range of 168-210 months.   The Government submits that a sentence at the top end

of the variant advisory guidelines range, **210 months**, is reasonable and accounts for each of the

factors set forth in 18 U.S.C. § 3553(a).   This upward variance and recommended sentence is by

agreement of both parties.


Respectfully submitted,

Dana J. Boente
United States Attorney

By:      _____/s/_____
Peter S. Duffey
Assistant United States Attorney
Virginia Bar No. 39477
Assistant U. S. Attorney
Office of the U.S. Attorney
600 East Main Street, Suite 1800
Richmond, Virginia 23219
(804) 819-5400
(804) 771-2316 (fax)
peter.duffey@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 29th day of April, 2016, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF filing system which will then send a notification of such filing (NEF) to counsel of record.

_____/s/_____
Peter S. Duffey
Virginia Bar No. 39477
Assistant U. S. Attorney
Office of the U.S. Attorney
919 East Main Street, Suite 1900
Richmond, Virginia 23219
(804) 819-5400
(804) 771-2316 (fax)
peter.duffey@usdoj.gov

8