IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIIA
Richmond Division

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

**v.**                                                        **Civil Action No. 3:15cr191**

**ROBERT C. DOYLE,**

        **Defendant.**

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Robert C. Doyle's Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) due to the "extraordinary and compelling" circumstances arising from the spread of coronavirus at his correctional facility, (the "Motion"). (ECF No. 126.) The United States responded in opposition, (the "Opposition"), (ECF No. 134), and Doyle replied, (the "Reply"). (ECF No. 136). The matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. For the reasons that follow, the Court will deny the Motion.

### I. Background

On December 1, 2015, a Grand Jury named Doyle and two co-conspirators in a three-count indictment.[1] (Indictment, ECF No. 16.) On February 5, 2016, Doyle pled guilty pursuant

---

[1] Count One charged all three defendants with Conspiracy to Affect Commerce by Robbery, in violation of 18 U.S.C. § 1951(a). Count Two charged Doyle and codefendant Ronald B. Chaney, III, with Possession of Firearm by Felon, in violation of 18 U.S.C. § 922(g)(1) and (2). Count Three charged Doyle and Chaney with Possession of Unregistered Firearms, in violation of 26 U.S.C. §§ 5814, 5861(d), and 5871 and 18 U.S.C. § 2. (Indictment 1–4, ECF No. 16.)

to a written plea agreement to Count One, Conspiracy to Affect Commerce by Robbery, in violation of 18 U.S.C. § 1951(a), and Count Two, Possession of Firearm by a Felon, in violation of 18 U.S.C. §§ 922(g)(1) and (2). (Plea Agreement 1, ECF No. 34.)

The Plea Agreement and the Statement of Facts describe the conduct underlying Doyle's offenses. In 2015, Doyle enlisted two co-conspirators, Chaney and Charles D. Halderman, to assist in a robbery. (Statement of Facts 1–2, ECF No. 33.) In October 2015, the Federal Bureau of Investigation ("FBI") recorded several meetings where Doyle "outline[d] a series of plans that he and his associates wanted to carry out in furtherance of their extremist beliefs. This included robbing *and killing* a local silver/jeweler dealer, robbing an armored car, and doing harm to a gun store owner in Virginia." (PSR ¶ 11, ECF No. 79 (emphasis added).) As proof of Doyle's intentions to commit an armed robbery and kill the jewelry dealer, the FBI's recordings demonstrated that Doyle stated these intentions on multiple occasions and that he arranged to buy firearms from an FBI undercover agent posing as an illegal arms dealer. (*Id.* ¶¶ 12–22.) Doyle sent his co-conspirator, Chaney, to receive the "two firearms, silencers, [and] explosives." (*Id.* ¶ 22.) On November 8, 2015, the FBI arrested Chaney following the attempted transaction of firearms, Doyle "was arrested later that day," and Halderman "was arrested for his participation in the conspiracy" the next day, on November 9, 2015. (*Id.* ¶¶ 22, 24.)

A Probation Officer issued a Presentence Report ("PSR") that calculated Doyle's total combined offense level to be twenty-seven.[2] (PSR ¶ 54.) Doyle's extensive criminal history[3] resulted in a criminal history score of seventeen, thereby placing him in a criminal history category of VI. (*Id.* ¶ 70.) Pursuant to the Sentencing Guidelines, Doyle's offense level and criminal history suggested for Count One a sentence between 130 to 162 months' imprisonment and one to three years of supervised release. (*Id.* ¶ 103.) For Count Two, the Sentencing Guidelines noted a statutorily restricted guidelines range of 120 months' imprisonment and one to three years supervised release. (*Id.*) The United States moved for an upward variance for "a sentence of 210 months on Count One, and a sentence of 120 months on Count Two, to be served concurrently." (U.S. Sent'g Pos. 2, ECF No. 74.) Doyle concurred with the upward variance. (Def. Sent'g Pos. 1, ECF No. 73.)

On May 4, 2016, United States District Judge James R. Spencer sentenced Doyle to 210 months' imprisonment for his two criminal convictions. (May 4, 2016 Judgment, ECF No. 89.) The Court later reduced Doyle's sentence to eighty-four months. (Nov. 28, 2017 Order, ECF No. 121.) "As of June 15, 2020, [Doyle] has served [fifty-five] months and [nine] days of his [eighty-four] month term of imprisonment," or sixty-five percent of his sentence. (Probation R.

---

[2] The combined adjusted offense level for both Count One and Count Two amounted to thirty points. (PSR ¶ 50.) Doyle's acceptance of responsibility allowed for a three point decrease that brought the total offense level to twenty-seven. (*Id.* ¶¶ 52, 53.) However, the total offense level of twenty-seven reflects several enhancements, including a two point enhancement for Doyle's organization and leadership of the criminal conduct in both offenses. (*Id.* ¶¶ 37, 44.)

[3] Doyle's criminal history reflects a long record of disobeying the law. His adult criminal convictions include multiple convictions for Possession of Marijuana, Embezzlement, and Grand Larceny. (*Id.* ¶¶ 60, 63, 67.) Doyle further committed several of these offenses while under a criminal justice sentence. (*Id.* ¶ 69.) Even while incarcerated in 2008 to 2012, Doyle received multiple disciplinary offenses including Possession of Contraband, Breach or Attempt to Breach Security Perimeter with Contraband, and Possession or Use of Weapon. (*Id.* ¶ 67.)

1, ECF No. 129.) Doyle "is eighteen months away from his release date of December 4, 2021." (Mot. 1, ECF No. 126.)

On June 3, 2020, the Bureau of Prisons Unit Manager denied Doyle's request for home confinement. (Mot. Ex. 2 "Letters" 3-7, ECF No. 126-2.) On June 3, 2020, Doyle filed the instant Motion for Compassionate Release. (Mot.) In the Motion, Doyle describes the current public health crisis caused by coronavirus, specifically the outbreak in and the risks associated with his detention at his specific correctional facility, FCI Butner Medium I. (*See e.g.*, *id.* 4–6.) Doyle maintains that "[t]he Butner prison complex is the site of one of the most devastating COVID-19 outbreaks in the country[,]" where "**nine** men have died and hundreds of other inmates and staff have contracted COVID-19." (*Id.* 1, 3 (emphasis in original).) Doyle, currently thirty-nine-years old, previously indicated "that he has no history of any serious or chronic medical conditions or illnesses, no prior hospitalizations, no allergies, and is currently not taking any prescribed medications."[4] (PSR ¶ 84.) The BOP classifies Boyle in the "lowest (or healthiest) rating of inmate medical status." (Opp'n 16, ECF No. 136); *see* Bureau of Prisons, *Care Level Classification for Medical and Mental Health Conditions or Disabilities*, https://www.bop/gov/resources/pdfs/care_level_classification_guide.pdf (last updated May 2019). The United States opposes his request for compassionate release. (ECF No. 134.)

---

[4] The Presentence Report noted that at the time of his sentencing Doyle reported that "his overall general health is good." (PSR ¶ 84.) However, the report also indicated that Doyle "has had pain in his stomach, lower back, and kidneys," suffered from a "painful growth on his testicle," and was "instructed to follow up for further testing for liver and kidney function" after previous tests came back abnormal. (PSR ¶¶ 84, 88.) Neither Doyle's Motion nor the United States' opposition discuss these health concerns.

## II. The COVID-19 Pandemic Has Led Inmates to Seek Compassionate Release from Prison to Avoid Serious Illness or Death

In March 2020, the World Health Organization declared COVID-19 a worldwide pandemic. World Health Organization, *Timeline of WHO's response to COVID-19*, https://www.who.int/news-room/detail/29-06-2020-covidtimeline (last visited Aug. 10, 2020). Following this declaration, individuals incarcerated within the Bureau of Prisons, including Doyle, began petitioning courts around the country for compassionate release under the First Step Act, citing individual risk factors as they relate to COVID-19. (Mot. 14.)

The Bureau of Prisons ("BOP") has recorded 10,928 federal inmates nationwide with positive COVID-19 test results. Fed. Bureau of Prisons, *COVID-19 Cases*, https://www.bop.gov/coronavirus/ (last visited Aug. 10, 2020). While 9,483 inmates and 759 staff members have recovered, 111 inmates and 1 staff member have died as a result of COVID-19. *Id.*

Relevant to the Motion at bar, Doyle is serving his sentence at FCI Butner Medium I, in Butner, North Carolina. (Mot. 2.) According to the Bureau of Prisons, Butner Medium I has 211 inmates who have recently tested positive for COVID-19. Fed. Bureau of Prisons, *supra*. Nine inmates at FCI Butner have died from COVID-19. *Id.* Granville County, including the town of Butner, itself has 1,245 confirmed cases and 27 confirmed deaths. *See* State of North Carolina, *COVID-19 North Carolina Dashboard*, https://covid19.ncdhhs.gov/dashboard (last visited Aug. 10, 2020).

## III. Legal Standard: Compassionate Release Under the First Step Act of 2018

In 2018, Congress enacted the First Step Act to provide incarcerated individuals the opportunity to directly petition the courts for compassionate release under 18 U.S.C.

§ 3582(c)(1)(A).[5] Prior to the First Step Act in 2018, the Bureau of Prisons ("BOP") had the sole authority to petition the court for sentence modifications on compassionate release grounds. *Coleman v. United States*, No. 4:17-cr-69, 2020 WL 3039123, at *1 (E.D. Va. June 4, 2020). Following enactment of the First Step Act, criminal defendants may petition courts on their own initiative to modify their sentences if "extraordinary and compelling reasons warrant such a reduction." *Id.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). Before granting a reduction, courts must consider the factors set forth in 18 U.S.C. § 3553(A), 18 U.S.C. § 3582(c)(1)(A), and evidence of rehabilitation and other post-conviction conduct. *See United States v. Martin*, 916 F.3d 389, 397–98 (4th Cir. 2019) (requiring consideration of post-conviction evidence and statutory sentencing factors in the context of a sentence reduction sought pursuant to § 3582(c)(2)).

### A. Exhaustion of Administrative Remedies

Although the Court generally cannot modify a term of imprisonment once it has been imposed, the defendant may bring a motion to modify his or her sentence "after the defendant

---

[5] Section 3582(c)(1)(A) states:

The court may not modify a term of imprisonment once it has been imposed except that—(1) in any case—(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that—

> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). "Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court." *Casey v. United States*, No. 4:18-cr-4, 2020 WL 2297184, at *1 (E.D. Va. May 6, 2020).

The court may waive the exhaustion requirement, however, in certain circumstances. *United States v. Jones*, No. 3:11-cr-249, ECF No. 47, at *2–3 (E.D. Va. Apr. 3, 2020) (Lauck, J.) Courts may waive exhaustion if: "pursuing an administrative remedy would be futile[,]" "'exhaustion via the agency review process would result in inadequate relief[,]' or 'pursuit of agency review would subject the petitioner to undue prejudice.'" *United States v. Robinson*, No. 3:10cr261, 2020 WL 4041436, at *3 (E.D. Va. July 17, 2020) (Lauck, J.) (quoting *Poulios v. United States*, No. 2:09-cr-109, 2020 WL 1922775, at *1 (E.D. Va. Apr. 21, 2020) (Jackson, J.)).

Throughout the country, courts have found the coronavirus pandemic, combined with a vulnerable defendant with underlying health conditions, implicates all three exceptions justifying a waiver of the exhaustion requirement. *See United States v. Zukerman*, No. 16 Cr. 194, 2020 WL 1659880, at *1, 3 (S.D.N.Y. Apr. 3, 2020) (holding that defendant's elderly age and serious health conditions warrant a waiver of exhaustion requirements because of the ongoing risk of infection while incarcerated); *United States v. Perez*, No. 17 Cr. 513-3, 2020 WL 1456422, at *3 (S.D.N.Y. Apr. 1, 2020) (waiving the exhaustion requirement because exhaustion would be futile as defendant would not see thirty days lapse before his release date).

### B. Courts Must Find Extraordinary and Compelling Reasons Justifying Compassionate Release

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify terms of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(A) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The United States Sentencing Commission further defines "extraordinary and compelling reasons." U.S.S.G. § 1B1.13, n.1; *see United States v. Kalivretenos*, No. 1:15-cr-00073-AJT, Dkt. No. 109, at *4 (E.D. Va. May 21, 2020). The Sentencing Commission identifies four instructive categories of extraordinary and compelling reasons that allow for a sentence to be modified: the petitioner's medical condition, age, family circumstances, and other reasons. U.S.S.G. § 1B1.13, n.1 (A)-(C).[6] However, a petitioner's rehabilitation alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t).

As a result of the coronavirus outbreak, "courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to

---

[6] The United States Sentencing Commission Guideline § 1B1.13 provides that:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
> (1) (A) extraordinary and compelling reasons warrant the reduction; or
>     (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

8

the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Feiling*, No. 3:19cr112, 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020) (citing *United States v. Dungee*, No. 7:15CR00005, 2020 WL 1666470, at *2 (W.D. Va. Apr. 4, 2020); *United States v. Edwards*, 6:17cr00003, 2020 WL 1650406, at *5 (W.D. Va. Apr. 2, 2020)). Several courts have held that "the fear of contracting a communicable disease" alone cannot be considered an "extraordinary and compelling reason" to justify a sentence modification. *Feiling*, 2020 WL 1821457, at *7 (citing *United States v. Clark*, No. 17-85-SDD-RLB, 2020 WL 1557397, at *4 (M.D. La. Apr. 1, 2020) (internal quotation marks and emphasis omitted)).

After finding a sufficient "extraordinary and compelling reason" for compassionate release, the Court must consider the § 3553(a) factors and any relevant postconviction conduct before modifying a defendant's sentence. 18 U.S.C. § 3582(c)(1)(A).

### IV. Analysis

#### A. Conditions in Doyle's Prison Facility in Addition to the Rapid Spread of Coronavirus Justify a Waiver of the Exhaustion Requirement

The Court will waive the exhaustion requirement because the health conditions at FCI Butner I, Doyle's place of incarceration, and the spread of coronavirus would make enforcing the exhaustion requirement futile, result in undue prejudice, and provide inadequate relief.

Doyle's incarceration at one of the most infected prison facilities in the nation, combined with the ongoing COVID-19 pandemic, justifies a waiver of the exhaustion requirement. Although an unresolved dispute exists between Doyle and the Government as to whether Doyle's exhausted his administrative remedies with the BOP[7], "[t]he Court may waive the exhaustion

---

[7] Doyle alleges that he exhausted his administrative remedies. After being notified that BOP staff at Butner never received his first request for compassionate release, Doyle allegedly filed a second request that "was denied on May 10, 2020." (Reply 6, ECF No. 136.) However, the Probation Officer's Recommendation and the United States' Response suggest otherwise.

requirement . . . if a recognized exceptions to exhaustion applies." *Perez*, No. 17-cr-513-3, 2020 WL 1546422, at *2. As previously stated, "the exhaustion requirement may be waived due to futility, inadequate relief, or undue prejudice." *Poulios*, 2020 WL 192277, at *3.

In this case, although Doyle himself does not experience any underlying health conditions related to coronavirus, his confinement within the Butner prison facility invokes all three exceptions and justifies a waiver of the exhaustion requirement. Specifically, Butner experiences one of the worst coronavirus outbreaks of any prison facility, where nine inmates perished from the coronavirus. Bureau of Prisons, *supra*. Thereby, a delay could subject Doyle to severe illness and potentially death if he contracts the virus while incarcerated. Given the unique circumstances of Doyle's prison facility and the rapidly advancing pandemic, requiring Doyle to exhaust administrative remedies "would result in undue prejudice and render exhaustion of the full Bureau of Prisons administrative process both futile and inadequate." *Jones*, No. 3:11-cr-249, ECF No. 47, at *2–3.

---

The Probation Officer states that the Senior Attorney at the Butner Legal Center indicates "there is no record of any administrative remedy request filings on Mr. Doyle's behalf or any record of him submitting a request for compassionate release." (Probation Officer's R. 1.) The United States alleges that although Doyle submitted to Butner staff a request to be considered for home confinement, the Unit Manager's response denying that request "made clear that [Doyle] had not submitted a completed request for compassionate release." (Opp'n 3.)

Doyle also provides as an exhibit the BOP letter denying his request for home confinement. That letter informs Doyle that if he believes that he meets the eligibility criteria for compassionate release that he should fill out the forms attached to the letter. (Mot. Ex. 2 "Letters" 3-7, ECF No. 126-2.) As a result, the Probation Officer and the United States contend that Doyle "has *not* exhausted the mandatory administrative requirements." (Opp'n 3.) Considering the pandemic circumstances at Butner, however, the Court will consider the merits of the Motion.

10

### B. The Court Will Dismiss Doyle's Motion Because He Fails to State an Extraordinary and Compelling Reason for Granting Compassionate Release

After due consideration, the Court finds that the Motion does not set forth an extraordinary and compelling reason that warranting Doyle's early release pursuant to 18 U.S.C. § 3582(c)(1)(A).

Doyle asserts that his particular vulnerability to coronavirus due to the conditions at his place of confinement at FCI Butner creates an extraordinary and compelling reason that warrants a modification of his sentence. (Mot. 10, 14.) As previously noted, a risk of being infected by the coronavirus does not itself constitute an extraordinary and compelling reason for granting compassionate release. Courts have found extraordinary and compelling reasons for compassionate release "when an inmate shows both a particularized susceptibility to the disease *and* a particularized risk of contracting the disease at his prison facility." *Feiling*, 2020 WL 1821457, at *7 (emphasis added). While Doyle contends only that the conditions of his confinement at FCI Butner creates a particularized risk of contracting the disease, his medical records[8] fail to show that he himself suffers a particularized susceptibility to the disease other than the prison conditions at Butner. (*See* Opp'n Ex. 1 Medical Records, ECF No. 134-1.)

Although the Court acknowledges the ongoing COVID-19 outbreak and concerning conditions at FCI Butner Medium I,[9] Doyle does not present any of the risk factors or concerns most associated with the virus. Doyle's medical records reflect "a robustly healthy, 39-year-

---

[8] While incarcerated, Doyle receives ongoing care for his blurry vision, dental problems, and anxiety disorder. (Medical Records.) Doyle also received care that treated his secondary hypertension, otitis externa, irritable bowel syndrome, and jaw pain. (*Id.*)

[9] As of August 10, 2020, the Bureau of Prisons reported 211 active cases amongst inmates at FCI Butner Medium I. *See* Fed. Bureau of Prisons, *supra*. Most concerningly, FCI Butner Medium I reports nine inmate deaths associated with coronavirus. *Id.*

old[10] individual who takes no medications, reports no medical conditions,[11] and is correspondingly classified in BOP's lowest (or healthiest) rating of inmate status." (Opp'n 16.) The Court finds that Doyle's assignment to FCI Butner Medium I cannot by itself constitute an "extraordinary and compelling" reason for his release, especially when considering Doyle's youth and good health.[12]

Doyle further contends that his motion for compassionate release should be granted because he has engaged in post-offense rehabilitation,[13] specifically that he completed

---

[10] The risk of severe illness from coronavirus increases appears to increase with age, and the Center for Disease Control ("CDC") warns that individuals who are 65 and older have a higher risk of severe illness. Centers for Disease Control and Preventions, *Older Adults*, CORONAVIRUS DISEASE, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited Aug. 10, 2020).

[11] The CDC states that "[p]eople of any age with certain underlying medical conditions are at increased risk for severe illness from COVID-19," which includes chronic kidney disease, chronic obstructive pulmonary disease, obesity, serious heart conditions, and other serious medical conditions. Centers for Disease Control and Prevention, *People with Certain Medical Conditions*, CORONAVIRUS DISEASE, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited Aug. 10, 2020) (emphasis omitted). The CDC further includes a list of conditions that might increase the risk of a person contracting a severe illness such as asthma, hypertension, liver disease, diabetes, and others. *Id.* Doyle's youth and absence of any serious medical conditions reflects a healthy individual, and under the CDC's findings, Doyle cannot be considered at an increased risk for severe illness. (*See* PSR.)

[12] Indeed, granting Doyle's motion for compassionate release could set the standard that anyone assigned to FCI Butner Medium I should be released on the sole basis of the conditions associated with the coronavirus outbreak. (Opp'n 16.)

[13] In *Martin*, 916 F.3d 389, 398 (4th Cir. 2019), the Fourth Circuit vacated and remanded the District Court's denial of both Defendants' motions to reduce sentence because the District Court failed to address any new mitigating evidence when denying the motions. 916 F.3d 397–98. If an individual is eligible for a sentence reduction, the Court must give weight to the person's "past transgressions" as well as "the multitude of redemptive measures that [Doyle] has taken." *See id.* at 397.
    However, in contrast to *Martin*, this Court finds that Doyle does not show he is eligible for a sentence reduction pursuant to § 3582(c)(1)(A) because extraordinary and compelling circumstances do not exist on this record. While Doyle's work assignment and participation in an extensive number of educational and vocational programs are commendable, these post-

12

educational classes[14] and assigned a work detail in Recreation. (Mot. 14–15; see Opp'n Ex. 2 Progress Report 1, ECF No. 134-2.) Although Doyle displays significant progress in his rehabilitation and this Court commends him for doing so, Congress made clear that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). Even if the Court considers rehabilitation in conjunction with all other reasons[15] Doyle raises for compassionate release, the Court nevertheless finds it unconvincing that Doyle's rehabilitation efforts combined with the conditions of his specific

---

rehabilitation measures do not warrant his early release in light of the seriousness of his current conviction, absence of a particular vulnerability to coronavirus, and the time remaining on his sentence.

[14] The United States contends that Doyle's education courses included primarily recreational activities, such as jump rope, cardio, wellness yoga, and nutrition classes, and these activities demonstrate a commitment to physical fitness and not necessarily rehabilitation. (Opp'n 16.) The Court does not find this argument convincing because Doyle's work assignment in Recreation indicates that the physical fitness courses may have contributed to his "good work performance." (Progress Report 1.) In any event, progress in rehabilitation alone cannot constitute an extraordinary and compelling reason that would warrant a reduction in sentence.

[15] In addition to the reasons described above, Doyle adds that his remaining sentence, eighteen months, should be considered when evaluating whether an extraordinary and compelling reason exists. Although Doyle has served over half of his eighty-four month sentence, this alone does not suffice granting an eighteen month sentence reduction to an otherwise healthy and young individual. *But see Jones*, No. 3:11-cr-249, ECF No. 47, at *5–6. (converting the remainder of the defendant's sentence, twenty-three days, to home detention); *Perez*, No. 17 Cr. 513-3, 2020 WL 1546422, at *3–4 (holding that the defendant met the extraordinary and compelling reasons standard because he had three weeks left on his sentence in combination with his vulnerable health condition). Doyle also does not suffer from any health conditions that would place him at a heightened risk of contracting coronavirus. Without a heightened vulnerability to coronavirus, keeping Doyle incarcerated to complete his sentence, with eighteen months remaining, does not add to the extraordinary and compelling reasons to reduce his punishment. *See United States v. Rodriguez*, No. 2:03-cr-00271-AB-01, 2020 WL 1627331, at *7, 10 (E.D. Pa. Apr. 1, 2020) (holding that defendant's serious medical conditions coupled with a year and a half left on his sentence constitutes an extraordinary and compelling reason to warrant reducing his sentence).

prison facility create an extraordinary and compelling reason justifying a modification in his sentence.[16]

In any event, the § 3553(a) factors also support a denial of Doyle's motion for compassionate release.[17] Doyle's criminal history and underlying convictions demonstrate that Doyle presents a threat to the public due to his disregard for the law. Doyle's adult criminal record includes convictions for Distribution of Marijuana in April 2001; Embezzlement in April 2003; Profane or Threatening Language over the Phone in October 2006; Worthless Check in December 2006; and Grand Larceny in February 2007. (*Id.* ¶¶ 60–67.) While incarcerated in state prison between 2008 and 2012, Doyle violated Virginia Department of Corrections

---

[16] Doyle cites in his motion *United States v. Tinsley*, No. 3:12-cr-20, ECF No. 104 (W.D. Va. Apr. 28, 2020) (Conrad, J.), a case in which Senior United States District Judge Glen E. Conrad granted a Motion for Compassionate Release concerning an inmate housed in Butner after the United States did not oppose defendant's request and the United States Probation Office approved the defendant's release plan. His order cited "defendant's serious medical concerns and other circumstances specific to [Tinsley's] case." (*Id.* 1.) In contrast, the United States opposes Doyle's Motion for Compassionate Release.

[17] Section 3553(a) provides, in relevant part:

The court shall impose a sentence sufficient, but not greater than necessary . . . .
The court, in determining the particular sentence to be imposed, shall consider—

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed--
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[] . . . .

18 U.S.C. § 3553(a).

regulations on at least nine separate occasions ranging from possession of contraband to possession of a weapon. (*Id.* ¶ 67.)

Although BOP records show that Doyle has committed only one disciplinary infraction during his time in federal detention, the infraction occurred within one year of the May 2020 BOP Progress Report, and his previous criminal history indicates that the Court should consider public safety and deterrence to criminal conduct. (*See* Progress Report 2.) Further, his criminal history reflects an escalation in the seriousness of his criminal behavior, ranging from an early conviction for distribution of marijuana to the instant conspiracy to commit robbery where he planned to kill an innocent person.[18] (*See* PSR ¶¶ 11, 62). The Court concludes that the record before it does not justify Doyle's early release from federal imprisonment.

## V. Conclusion

For the foregoing reasons, the Court will DENY Doyle's Motion for Compassionate Release. (ECF No. 126.)

An appropriate order shall issue.

/s/
M. Hannah Lauck
United States District Judge

Date: August 10, 2020
Richmond, Virginia

---

[18] Although the Fourth Circuit precludes the conspiracy to commit a Hobbs Act robbery from being considered a violent crime, the Court notes that the nature of Doyle's conduct during this conspiracy can be viewed as deliberately violent. *See United States v. Simms*, 914 F.3d 229, 233 (4th Cir. 2019) (holding that a conspiracy to commit a Hobbs Act Robbery is not a crime of violence). For instance, Doyle "enlisted fellow violent white supremacists to help him purchase illegal firearms and explosives; [and] set up purchases of precious metals from a dealer [he] planned to execute after robbing the jeweler." (Opp'n 20.) The firearms purchased included an M.16 30-round assault rifle with a silencer and a .45 caliber pistol, also with a silencer. (PSR ¶ 23.)